UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE R. ZAIZA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>D. TAMPLEN, et al.,<br><br>　　　　　Defendants. | No. 2:15-cv-447-KJM-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought pursuant to 42 U.S.C. § 1983. Defendants move for summary judgment, arguing that plaintiff failed to exhaust his available administrative remedies before filing suit. ECF No. 36. For the reasons that follow, the motion must be denied.

**I.　　Plaintiff's Claims**

This case currently proceeds on plaintiff's first amended complaint. ECF No. 14. The court screened that pleading and found that plaintiff had stated potentially cognizable Eighth Amendment claims against defendants Giessner and Tamplen for alleged excessive force and against defendants Robertson, Davis, Gonzalez, Fleming, and Arana for alleged deliberate indifference to serious medical needs. ECF No. 16. The court found that other claims raised in the complaint had been improperly joined, and plaintiff agreed to proceed solely on the Eighth Amendment claims against Giessner, Tamplen, Robertson, Davis, Gonzalez, Fleming, and Arana. *Id.*; ECF No. 17.

1

1          Plaintiff alleges that, after a mass disturbance between southern Hispanic inmates on
2   August 20, 2012 on Facility C-Yard at High Desert State Prison (HDSP), defendant Giessner
3   sprayed him and other inmates with pepper spray even though he was lying on the ground with
4   his head down and posed no threat. ECF No. 14 at 4. Plaintiff was soaked in pepper spray when
5   an officer "zip tied" him with "flex cuffs." *Id.*

6          When the disturbance was over and the inmates secured, defendant Tamplen and Officer
7   Sullivan began, under order, to reposition the inmates. *Id.* Tamplen ordered plaintiff to get up
8   and, while walking him to the new position, began to mumble under his breath. *Id.* With no
9   warning, Tamplen then used his knee and thigh to forcefully slam into plaintiff, causing plaintiff
10  to fall on his right side and experience excruciating pain. *Id.*

11         Plaintiff spent two hours drenched in pepper spray and in severe pain from Tamplen's
12  assault. *Id.* He asked defendant Robertson if he could decontaminate because his face and body
13  were "on fire," but she responded, "You don't have shit coming." *Id.* at 4-5. Plaintiff asked to
14  see the nurse because he "couldn't breathe right" but Robertson told him to "suck it up." *Id.* at 5.

15         Plaintiff then asked defendant Davis if he could decontaminate or see the nurse, but
16  defendant Davis told him to "shut up." *Id.* Plaintiff told Davis and Robertson that he needed
17  medical attention because his shoulder was in severe pain from Tamplen's excessive force, but
18  they ignored him. *Id.*

19         When five hours had elapsed, plaintiff told Davis and Robertson that he couldn't feel his
20  left hand because the zip ties were too tight. *Id.* Plaintiff told them that he had surgery affecting
21  his wrist and shoulder and a chrono stating that he should not be handcuffed behind his back. *Id.*
22  Robertson told him, "Your chrono ain't gonna help you out of this." *Id.*

23         After 10 hours without decontamination or medical attention, plaintiff saw a nurse,
24  defendant Gonzalez. *Id.* He told her that he needed decontamination and that he was in bad pain
25  from Tamplen's conduct. *Id.* Gonzalez replied, "No, no, no, no, I ain't getting involved." *Id.*
26  Plaintiff pleaded with Gonzalez for medical attention and told her about his chrono. *Id.* She
27  shrugged her shoulders and refused to provide medical help. *Id.*
28  /////

Plaintiff was then escorted to an office and interviewed by defendant Fleming, the institutional gang investigator. *Id.* at 5-6. Fleming was verbally aggressive from the outset, saying, "You're a fucken southern Mexican ain't you [sic]." *Id.* at 6. Fleming threatened to validate every inmate involved in the altercation, but plaintiff responded that he had not participated. *Id.* Plaintiff asked Fleming to stop threatening him and instead investigate defendant Tamplen's assault on him. *Id.* Fleming continued to verbally abuse plaintiff, refused to provide him with medical treatment for his shoulder and pepper-spray exposure, and poked plaintiff's shoulder injury, causing more pain. *Id.*

After 10 hours, plaintiff was taken to administrative segregation, where defendant Arana refused plaintiff's request for medical attention because he was tired and wanted to go home. *Id.* Arana placed plaintiff in a cell with no cold water, half of a mattress, and one sheet. *Id.* He refused plaintiff's requests for another sheet and clothing. *Id.*

## II. The Motion for Summary Judgment

Summary judgment is sought on the grounds that plaintiff did not exhaust available administrative remedies as to the claim asserted here. Exhaustion may be challenged either on the grounds that the complaint itself demonstrates a failure to exhaust, or on the grounds that there is no genuine dispute of material fact as to the question of exhaustion. Thus, a defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) in the rare event that is clear on the face of the complaint that the plaintiff did not exhaust his administrative remedies. *Id.* at 1166. "Otherwise, defendants must produce evidence proving failure to exhaust" in a summary judgment motion brought under Rule 56. *Id.* If the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120, *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

### A. **Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

3

to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

/////

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 36-2; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### B. The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (the purpose of the exhaustion requirement is to give

officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case").

California state prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation (CDCR Form 602), which instructs the inmate to describe the problem and outline the action requested. Title 15 of the California Code of Regulations, §§ 3999.225 *et seq.* provide instructions specific to health care appeals, while §§ 3084 *et seq.* provide instructions for other grievances.

The grievance process, as defined by the regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227, 3087.3, 3087.4, 3087.5. Administrative procedures generally are exhausted for non-healthcare grievances once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b). For healthcare grievances, administrative procedures are exhausted by receipt of a "headquarters' level" decision. *Id.* §§ 3999.226(g), 3999.230(h).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 216 (2007). To bear this burden:

> [A] defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance

7

procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted). Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d at 1172.

### C. <u>Analysis</u>

Here, it is not clear from the face to the complaint that plaintiff failed to exhaust. Instead, defendants present evidence that administrative remedies were available to plaintiff but he did not fully pursue them. Thus, analysis of this motion is properly under Rule 56.

Plaintiff's claims in this case can be placed in two categories: (1) his excessive force claims against Giessner and Tamplen, and (2) his claims against the remaining defendants for denying needed medical attention. Defendants argue a failure to exhaust as to both categories.

#### 1. <u>Excessive Force</u>

Defendants present evidence that plaintiff submitted one grievance regarding his excessive force claim against defendants Giessner and Tamplen. ECF Nos. 36-5 (Decl. of M. Chappuis) & 36-6 (Decl. of M. Voong). Plaintiff filled out the grievance form on November 24, 2012 and it was received on December 4, 2012 and assigned log number HDSP-Z-12-04034. ECF No. 36-5 at 2-3, 11. In the grievance (hereafter referred to as "Appeal 04034"), plaintiff complained that he had been wrongly charged with a rules violation for battery on a peace officer in connection with the yard disturbance on August 20, 2012. *Id.* at 11. He further complained that his Eighth Amendment rights had been violated that day when Tamplen "slammed" him after he was restrained and when he was "pepper sprayed and left zip-tied with no food or water for 10 hours without decontamination" by officers plaintiff did not identify. *Id.* at 13.

/////
/////
/////

8

At the first level, the appeal reviewer identified plaintiff's issues as (1) excessive force by Tamplen[1] and (2) the allegedly wrongful rules violation report. *Id.* at 17. The reviewer informed plaintiff that

> All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity.

*Id.* The two identified issues were bifurcated into separate appeals[2], but no explicit mention was made of plaintiff's claim that unidentified staff had pepper sprayed him and left him zip-tied for 10 hours with no decontamination. *Id.* at 2. The reviewer determined on February 19, 2013 that Tamplen had not violated CDCR policy. *Id.* at 19. The same conclusion was reached by the second level appeal reviewer on April 11, 2013. *Id.* at 7, 9.

Defendants' evidence shows that Appeal 04034 was received at the third level on July 12, 2013, but was screened out and rejected because it was missing a copy of the first level review decision letter and a CDCR Form 1858 Rights and Responsibilities Statement. ECF No. 36-6 at 3. The appeal was again received at the third level on August 5, 2013, but was again screened out on August 16, 2013 for missing the same documentation. *Id.* No further records exist of the appeal at CDCR's Office of Appeals. *Id.* at 4. Thus, defendants argue, plaintiff did not exhaust his claims against Tamplen and Giessner.

Plaintiff does not dispute the evidence presented by defendants. However, he argues that he must be excused from exhausting Appeal 04034 because his attempts to exhaust it were frustrated by prison officials.

---

[1] The appeals reviewer, and all subsequent reviewers, did not identify a claim against defendant Giessner, as plaintiff did not identify Giessner by name in the grievance. Plaintiff did challenge Giessner's alleged misconduct in the grievance, however, and defendants do not argue that plaintiff did not properly raise Giessner's misconduct in the appeal by failing to identify him by name.

[2] This resulted in the creation of another grievance concerning the rules violation report, which is not relevant to this action. ECF No. 36-5 at 2-3.

First, plaintiff argues that prison officials failed to process Appeal 04034 in a timely fashion. It is arguable that the first-level response fell outside the 30-day window provided for by California regulations. Cal. Code Regs., tit. 15, § 3084.8(c). The appeal was bifurcated within 30 days and the ultimate response was issued within 30 days of the bifurcation decision, but that response was not made within 30 days of the initial receipt of the appeal. But this arguable failure to comply with the regulatory time limits did not render the appeals process unavailable to plaintiff. The delay was minimal, the grievance was addressed, and plaintiff was able to continue seeking review. *See Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005) (holding that prison officials may not exploit the exhaustion requirement through infinite delay in responding to grievances). In short, plaintiff has not raised a triable issue of material fact that the delay rendered the administrative process unavailable to him. The record plainly shows that it did not. Thus, the delay does not excuse his failure to exhaust.

Second, plaintiff argues that he could not attach the first level decision letter nor the CDCR Form 1858 to the third level appeal because prison officials had refused to provide him with these documents. Yet plaintiff's own evidence shows that he had received a copy of all of the appeal decisions by June 26, 2013, well before the third level appeal was initially received by the Office of Appeals. ECF No. 41 at 4-5, 29. Thus, whatever his prior difficulties had been in obtaining a copy of the first level review decision, they are not relevant to whether he could have attached it to the third level appeal. This does not demonstrate a material issue of fact as to whether administrative remedies were actually available to plaintiff .

Plaintiff also argues that the correctional officer in charge of the law library refused to give him a Form 1858 in February 2013. That plaintiff was allegedly not provided the form by a single officer at this early date does not provide an adequate explanation of his failure to secure the form by July 2013, when he submitted his third-level appeal. Thus, plaintiff has not raised a triable issue of material fact that the refusal of officials to provide him with necessary documents prevented him from exhausting the grievance.

Lastly, plaintiff states under penalty of perjury that he "finally received his property on about late August or September 2013," and resubmitted his request for third-level review of

Appeal 04034 a third time in September 2013, but that it was either thrown away or lost by correctional officers. ECF No. 41 at 5, 7. As further evidence of this claim, plaintiff has submitted a CDCR Form 22 Request dated October 14, 2013, in which he wrote, "I'm sending this CDCR 22 as a proof of mailing [illegible] [illegible] 602 not being forwarded." ("602" is short-hand for a California prison grievance, which is created on a CDCR Form 602.) However, in the body of the request, plaintiff did not identify the 602 as Appeal 04034, and in fact he identified a different grievance in the "topic" box of the form. ECF No. 41 at 34. Plaintiff asserts that he also wrote to the appeals coordinator addressing issues of his appeals not being answered and confidential mail be opened without plaintiff being present. *Id.* at 5. He also sent a letter to the "Warden or Assistant" on August 6, 2013 (the envelope is date stamped received on August 9, *id.* at 31) stating that he had been constantly trying to get back his property and legal mail and emphasizing: "I really need my legal work transcript and addresses . . . ." *Id.* at 32. Earlier, some time prior to January 23, 2013, he wrote to complain to the Office of Inspector General about "issues concerning the Appeal System." *Id.* at 6. Finally, plaintiff submits a copy of a report by the Office of Inspector General and references pages 27 and 28 of that report regarding multiple complaints that inmate appeals were being destroyed or discarded and never delivered to the Appeals Office. ECF No. 41 at 83 - 84.

      While plaintiff has not produced a copy of the resubmitted third-level appeal that he allegedly sent in September 2013, the record shows multiple efforts by plaintiff to obtain his legal papers after his multiple relocations. Collectively, these documents together with plaintiff's statement under penalty of perjury that he resubmitted the third-level appeal but it apparently was not delivered to the appropriate office, viewed in the light most favorable to plaintiff, present a genuine dispute over a material issue of fact that precludes summary judgment on the issue of exhaustion. Plaintiff's testimony that he re-sent the relevant appeal document a third time in September 2013, if believed, would establish that his attempt to resubmit the grievance was frustrated by official conduct. Resolution of this material dispute requires a credibility determination and it cannot be resolved on summary judgment. Accordingly, summary judgment

/////

cannot be granted as to plaintiff's claims against defendants Giessner and Tamplen for failure to exhaust.

## 2. Deliberate Indifference to Medical Needs

Defendants' argument in favor of summary judgment focuses solely on Appeal 04034. *See* ECF No. 36-1. They do not explain what happened to plaintiff's claims that officers had left him cuffed and covered in pepper spray for 10 hours, which plaintiff raised in that grievance but which reviewing officials never responded to, beyond informing plaintiff:

> All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity.

ECF No. 36-5 at 17. It could be argued that this language sufficed to inform plaintiff that, if he wished to pursue his grievances against the unidentified persons who left him pepper-sprayed and zip-tied, he needed to request help in identifying those persons and file a separate appeal and that, because plaintiff did not do so, he did not exhaust this claim. Defendants have not presented such an argument, however.

Moreover, it is not clear that plaintiff did not file a separate appeal of the deliberate indifference claims. While defendants present evidence that plaintiff filed no healthcare grievance concerning the August 20, 2012 incident (ECF No. 36-4 (Decl. of S. Gates)), plaintiff avers that he did file such a grievance (ECF No. 41 at 6). The record contains a document potentially corroborating plaintiff's testimony; attached to plaintiff's original complaint is a Health Care Services Request Form filled out by plaintiff on November 5, 2012, in which plaintiff wrote

> I've been having real bad cramps in my hands and fingers are locking. It's been like this since late august. I was cuffed up [illegible] and I think that's what caused it. [illegible] I was sprayed and was never decontaminated. Around my eyes it's still red like burn marks. I did let the nurse and doctor know. But the marks are still there can you please give me something for it.

12

ECF No. 1 at 74.[3] This document bears a stamp: "RECEIVED OTLA-HC Jun-3 2013 [semi-legible words that appear to be 'HC APPEALS']." OTLA refers to the Office of Third Level Appeals, which reviews prisoner health care grievances at the third level. *Tubach v. Lahimore*, No. 1:10-cv-913 AWI SMS (PC), 2012 U.S. Dist. LEXIS 141087, at *5-6 (E.D. Cal. Sept. 27, 2012). The document suggests that plaintiff's deliberate indifference claims were received as a third-level healthcare grievance on June 3, 2013 and raises a triable issue as to whether plaintiff exhausted those claims.

### III. Timing of Exhaustion Determination

Defendants ask that if the court concludes that a triable issue exists on the question of exhaustion of administrative remedies, that an "*Albino* hearing" be held to determine the exhaustion question prior to trial. In *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014), the Ninth Circuit concluded that the question of exhaustion cannot often cannot be resolved based on the face of the complaint and therefore must usually be determined via a motion for summary judgment. It also noted that if disputed facts material to the exhaustion question preclude its resolution on summary judgment, the district judge, not the jury, should decide the disputed factual issues as to exhaustion. *Id*. Finally, it pointed out that where it is feasible the district judge could decide the issue in a preliminary proceeding rather than awaiting trial. *Id.* at 1168. As this request is directed to the district judge, the undersigned makes no recommendation but simply includes it herein to draw it to the attention of the court.

### IV. Plaintiff's Additional Motions

Along with his opposition to the motion for summary judgment, plaintiff submitted a discovery request to the court asking defendants to produce "video recording for" Appeal 04034, "investigation reports" of Special Agents David Faingold and Rick Ivicevich, and photo and video evidence pertaining to another, unrelated appeal. ECF No. 41. Plaintiff has requested these things before and has been informed that he should not submit generalized discovery requests to

---

[3] Any objection defendants may raise to the court's use of documents appended to the original complaint has been waived by defendants' own reference to those documents. ECF No. 36-1 at 3 n.1.

13

the court, that the discovery deadline has passed, and that plaintiff has not explained how the evidence he seeks is relevant to the exhaustion issue. ECF No. 45. The court informed plaintiff that, if he wishes to make a now-untimely discovery request, he should move to extend the discovery deadline, and that such a motion must present the court with good cause for modifying the schedule and an explanation of the relevance of the evidence to the exhaustion question. *Id.* at 1-2. Plaintiff has not complied with these directions, and the motion will be accordingly denied.

Plaintiff has also filed a "motion for extension of time for dispositives" (ECF No. 47) and a motion for a court order compelling prison officials to allow him access to the law library and provide him with indigent envelopes (ECF No. 48). Plaintiff's motion for an extension of time will be denied as moot, as the court has already ordered that the parties shall have 30 days from any ruling on the motion for summary judgment to file and serve other dispositive motions. ECF No. 45. Defendants oppose plaintiff's motion regarding law library access and envelopes and provide a declaration from a law library staff detailing plaintiff's library access and the materials he has been provided. ECF No. 49. As it appears from defendants' filing that plaintiff is not being denied access to the law library or envelopes needed for legal matters, the court will deny plaintiff's motion without prejudice. If plaintiff continues to believe that the level of access he has to the library and various materials is inadequate, he may file another motion on the issue detailing how the lack of access and/or supplies is frustrating his litigation of this action.

**V.  Order and Recommendation**

In accordance with the above, it is HEREBY ORDERED that:

1. Plaintiff's November 19, 2018 motion for discovery (ECF No. 41) is DENIED;
2. Plaintiff's January 7, 2019 motion for extension of time (ECF No. 47) is DENIED; and
3. Plaintiff's January 7, 2019 motion for order compelling custodians to allow law library access and indigent envelopes (ECF No. 48) is DENIED.

/////

/////

/////

14

It is further RECOMMENDED that defendants' October 25, 2018 motion for summary judgment (ECF No. 36) be DENIED and the district judge issue an order either setting a date for a preliminary hearing on the issue of exhaustion or denying defendants' request for such a hearing.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 28, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE